IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN FEDERICO, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 09-CV-2027 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| FREEDOMROADS RV, INC., d/b/a CAMPING WORLD RV SALES and WINNEBAGO INDUSTRIES, INC., | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Plaintiff Steven Federico ("Federico") alleges in his second amended complaint that defendants Freedomroads RV, Inc. ("Freedomroads") and Winnebago Industries, Inc. ("Winnebago") sold him a defective recreational vehicle, failed to repair the defective vehicle as warranted and then refused to replace the vehicle or refund Federico the purchase price. Freedomroads and Winnebago have moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. For the following reasons, the motion is granted with respect to Count I of the second amended complaint and denied as to Counts II, III and IV.

## I. BACKGROUND

### A. Facts[1]

#### 1. Federico's RV Purchase

On May 27, 2008, Federico purchased a new 2008 Winnebago Voyage recreational vehicle (the "RV") from Freedomroads, an authorized Winnebago dealer, for $121,857.37. Ford

---
[1] Unless otherwise attributed, the following facts are taken from Federico's second amended complaint and the exhibits attached thereto.

Motor Company ("Ford") manufactured certain portions of the RV, including the chassis. Federico's purchase of the RV is evidenced by the May 27, 2008 purchase order he signed. The purchase order contains the following disclaimer: "**THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**" May 27, 2008 Purchase Order ¶ 10. The provision goes on to state that:

> **UNLESS A SEPARATE WRITTEN INSTRUMENT SHOWING THE TERMS OF ANY DEALER WARRANTY OR SERVICE CONTRACT IS FURNISHED BY DEALER TO BUYER, THIS VEHICLE IS SOLD 'AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED'; AND THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

Id.

The purchase order's signature block includes an additional disclaimer that states as follows:

> <u>DEALER HEREBY DISCLAIMS ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE (A) ON ALL GOODS AND SERVICES SOLD BY DEALER; AND (B) ON ALL USED VEHICLES WHICH ARE HEREBY SOLD 'AS IS – NOT EXPRESSLY WARRANTED OR GURANTEED'.</u>

Id. at 1.

According to Federico, his purchase of the RV was "accompanied" by Winnebago's express warranty (the "Winnebago Warranty") and Ford's express warranty (the "Ford Warranty"). Compl. ¶ 8. Federico alleges though that he was not given an opportunity to review the warranties prior to the completion of the sale and only found the warranties in the Winnebago manual bag after he took possession of the RV.

The Winnebago Warranty provides that:

2

> Any part of the vehicle subject to this warranty that is found to be defective in material or workmanship under normal use and maintenance will be repaired or replaced at Winnebago's option without charge to the customer for parts or labor upon notice of the defect.

Winnebago Warranty at 1. The Winnebago Warranty, however, identifies several items that are "not subject to warranty coverage," including the chassis, drivetrain and related components, wheels, tires, adjustments and "[a]ny other part or component covered by a written warranty issued by its manufacturer." Id. In the event that an RV requires service, the Winnebago Warranty instructs the purchaser to (1) promptly take the vehicle to the selling dealer for repair or inspection; (2) provide written notice of the defects to the selling dealer and manufacturer; (3) request that the dealer contact Winnebago if the dealer is incapable of making the repairs; (4) contact Winnebago if the repairs are still not made; and (5) contact Winnebago's service administration manager and request a customer relations board meeting if the repairs are not satisfactory. Id. at 2.

The Ford Warranty states that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship," so long as the vehicle is properly operated and maintained and "was taken to a Ford dealership for a warranted repair during the warranty period . . . ." Ford Warranty at 8-9.

### 2. The Attempted Repairs of the RV's Defects

Federico claims that his RV was in a "severely defective" condition at the time of purchase. Compl. ¶ 13. Specifically, he alleges that the RV had defects in the flywheel, harmonic damper, torque converter, engine, rear and front axle, leveling system and in the steel and aluminum truss work. In addition, the RV's structural components were not properly affixed

3

to the chassis "causing the RV to be unstable and vibrate excessively at normal operation." Id. These defects allegedly rendered the RV "unsafe to drive over the open road." Id. ¶ 14.

According to Federico, he first experienced the RV's excessive vibration on June 3, 2008 and subsequently brought the RV to Freedomroads for repair. On June 16, 2008, Freedomroads sent the RV to Buss Ford, a Ford dealer in McHenry, Illinois, who balanced the RV's tires and made repairs to the rear axle. Federico took the RV back to Freedomroads on June 20, 2008 because "the RV had not been repaired and was not acceptable." Id. ¶ 21. Freedomroads again sent the RV to Buss Ford, this time for steering wheel repairs. Upon receipt of the RV, Federico went to Freedomroads a third time, claiming that the RV was still not repaired. Freedomroads sent the RV to Buss Ford on July 3, 2008 for replacement of a wheel and the rotation of the remaining tires. Federico remained unsatisfied with the repairs and took the RV to Freedomroads again in July and August of 2008. On both those occasions, Freedomroads sent the RV to "another authorized dealership." Id. ¶ 24. That dealership's attempted repairs were also unsuccessful. On September 20, 2008, Federico brought the RV to Freedomroads for a sixth and final time. On this occasion, Buss Ford removed, reinstalled and balanced the RV's drive shafts and checked its u-joints. This repair attempt, like the others, was a failure. Federico alleges that after each of the six above-described attempts at repairing the RV, "Winnebago and Ford represented that the [RV's] defective condition had been repaired and resolved . . . ." Id. ¶ 26.

On September 21, 2008, Patrick Carr, the general manager of Freedomroads, test-drove the RV and signed a statement acknowledging the RV's "shimmy" problem. The statement, co-signed by Federico, states in its entirety as follows:

> This letter is being used to acknowledge that Patrick Carr came out to Steven Federico['s] home to test drive his Winn[e]bago to see if the shimmy Mr.

4

> Federico has been talking about sense [sic] the first trip [sic]. Mr. Federico has
> had the motor home into [sic] be fixed 6 times. I do feel the problem he is
> speaking about. We will again try and fix this problem. If not[,] we will refund
> in full cost of Winn[e]bago [sic].

Sept. 21, 2008 Carr/Federico St. at 1.[2]

On October 9, 2008, Federico's attorney sent Carr a letter informing him that Federico was revoking his acceptance of the RV. Federico's attorney explained that "[t]he attempted repairs on the vehicle are unacceptable to my client as after multiple attempts, the vehicle still excessively vibrates." Oct. 9, 2008 Letter at 1. Upon receiving no response to his initial letter, Federico's attorney sent a second letter to Carr and Winnebago on November 6, 2008 with a draft complaint attached.

## B. Procedural History

On February 24, 2009, Federico brought a four-count complaint against Freedomroads, Winnebago and Crystal Valley RV, LLC in the Circuit Court of Cook County. The complaint contained a breach of implied warranty claim against Winnebago and breach of express warranty claims against Winnebago and Freedomroads – all brought pursuant to the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq. Federico also brought Illinois Consumer Fraud Act ("ICFA") claims against all three defendants. On April 1, 2009, Freedomroads and Winnebago removed the action to this Court under 28 U.S.C. § 1441, asserting that this Court had original jurisdiction over Federico's warranty claims and supplemental jurisdiction over his ICFA claims pursuant to 15 U.S.C. § 1367.

On April 15, 2009, Federico filed a five-count amended complaint that added Ford as a defendant and dismissed Crystal Valley RV, LLC. The amended complaint included the

---

[2] Freedomroads contends that the last sentence of this statement was added after Carr had signed the document. Freedomroads concedes, however, that this factual dispute has no impact on the outcome of the motion before the Court.

5

following claims brought pursuant to the MMWA: (1) a breach of implied warranty claim against Freedomroads; (2) a breach of express warranty claim against Winnebago; (3) a breach of express warranty claim against Ford; and (4) a breach of express warranty claim against Freedomroads. The amended complaint also brought one ICFA claim against Freedomroads, Winnebago and Ford. On May 8, 2009, Freedomroads and Winnebago moved to dismiss Counts I, II, IV, and V of the amended complaint or, alternatively, moved for a more definite statement of Count II. On June 19, 2009, Ford moved to dismiss Counts III and V of the amended complaint, or, alternatively, moved for a more definite statement of Count III. Three days later, Freedomroads and Winnebago joined in Ford's motion. On June 25, 2010, the Court granted Ford's motion in the alternative and ordered Federico to file a more definite statement. Federico filed a more definite statement of his Count III breach of express warranty claim on July 17, 2009.

Ford subsequently filed a motion to dismiss Federico's more definite statement of Count III, as well as Count V. While Ford's motion was pending, Federico voluntarily dismissed his Count V ICFA claim against Ford. On November 18, 2009, the Court granted Ford's motion and dismissed Federico's Count III breach of express warranty claim with prejudice. As a result, Ford was no longer a party to this Action. That same day, the Court granted Freedomroads and Winnebago's motion to dismiss in part and denied it in part. The Court dismissed Federico's Count IV breach of express warranty claim against Freedomroads with prejudice and ordered Federico to file a more definite statement of his Count II breach of express warranty claim against Winnebago. With respect to Count II, the Court stated that Federico must "specify the precise nature of the [RV's] defect, the component which was defective, and the relevant section of the warranty that applies to the alleged defect." Nov. 18, 2009 Order at 2. The Court denied

the motion to dismiss with respect to Federico's breach of implied warranty claim against Freedomroads and his ICFA claim against Freedomroads and Winnebago. Federico filed his more definite statement of his Count II express warranty claim on December 11, 2009.

On December 17, 2010, Freedomroads and Winnebago filed a motion to reconsider the Court's November 18, 2009 Order. The motion also sought the dismissal of Federico's more definite statement of Count II. On April 1, 2010 the Court granted the motion and dismissed all remaining counts of Federico's amended complaint without prejudice. The Court's Order noted that Federico's more definite statement of Count II "once again fail[ed] to identify the defective component at issue, or even allege that the defect at issue was covered by the admittedly limited Winnebago warranty." April 1, 2010 Order at 2. Accordingly, the Court granted Federico "one final chance" to state a claim for breach of express warranty against Winnebago. Id.

On April 28, 2010, Federico filed his second amended complaint. Federico's second amended complaint (the "Complaint" or "Federico's Complaint") contains the following claims brought pursuant to the MMWA: (1) a breach of express warranty claim against Winnebago; (2) a breach of implied warranty claim against Freedomroads; (3) a breach of contract claim against Freedomroads; and (4) a breach of express warranty claim against Ford.[3] Federico's Complaint also brings ICFA claims against Freedomroads and Winnebago. On May 26, 2010, Freedomroads and Winnebago moved to dismiss Counts I-IV of the Complaint pursuant to Rule 12(b)(6). The motion is now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Review

---

[3] Federico's breach of express warranty claim against Ford was and is dismissed with prejudice. Federico acknowledges that his claim against Ford was previously dismissed with prejudice but claims he is repleading the count to "preserve the record." Compl. at 20.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Johnson v. Wal-Mart Stores, Inc., 588 F.3d 439, 441 (7th Cir. 2009) (quotations omitted) ("In order to survive a motion to dismiss, the complaint must make factual allegations that raise a right to relief above the speculative level."). "Even after Twombly, courts must still approach motions under Rule 12(b)(6) by construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." Hecker v. Deere & Co, 556 F.3d 575, 580 (7th Cir. 2009) (quotations omitted).

With respect to fraud claims, FED R. CIV. P. 9(b) requires that a party "state with particularity the circumstances constituting fraud." See also DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (explaining that to satisfy Rule 9(b) a plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story").

## B. Analysis

### 1. Breach of Express Warranty Claim Against Winnebago

Winnebago asserts that Federico's Count I breach of express warranty claim should be dismissed because Federico does not allege the provision or provisions of the Winnebago Warranty that apply to the RV's allegedly defective components. The Court agrees.

The MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004). To state a claim for breach of express warranty under Illinois law, "plaintiff must show breach of an affirmation of fact or promise which was made part of the basis of the bargain." Wheeler v. Sunbelt Tool Co., Inc., 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989); see

also Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627, 639 (Ill. App. Ct. 2001) (holding that an express warranty must be in writing to state a claim under the MMWA). In Bowers v. Crystal Valley, R.V., where plaintiffs brought a breach of express warranty claim against an RV dealer after experiencing recurring problems with a motorhome they purchased, the court required plaintiffs to specify in their complaint the component that was defective and "the relevant section of the warranty which allegedly applies to that particular part in case of a defect." No. 95 C 7527, 1996 WL 169415, at *2 (N.D. Ill. April 9, 1996).

In the present case, the Court has twice ordered Federico to produce a more definite statement of his breach of express warranty claim because he failed to specify the RV's allegedly defective component and the relevant section of the warranty that applies to the alleged defect. See Nov. 18, 2009 Order at 2 (citing Bowers, 1996 WL 169415, at *2); see also April 1, 2010 Order at 2 (citing Bowers, 1996 WL 169415, at *2) (noting that "Federico's more definite statement once again fails to identify the defective component at issue, or even allege that the defect at issue was covered by the admittedly limited Winnebago warranty"). The Court's April 1, 2010 Order dismissed Federico's breach of express warranty claim without prejudice and informed him that he had "one final chance" to provide a more definite statement of the claim.

Despite the Court's explicit warning, the breach of express warranty claim in Federico's Complaint still fails to identify the portion of the Winnebago Warranty that applies to the RV's alleged defects. Federico's Complaint does finally list specific components of the RV that were allegedly defective, see Compl. ¶ 13, but never alleges what provision of the Winnebago Warranty covers these defects. Rather, Federico's Complaint only discusses the Winnebago Warranty in the broadest of terms. See id. ¶ 9 (alleging in a circular fashion that the Winnebago Warranty covers "any part of the vehicle subject to the warranty"). In addition, Federico

9

repeatedly treats the Winnebago Warranty and the Ford Warranty co-extensively, see, e.g., id. ¶ 17 (alleging that Federico brought the RV to Freedomroads for warranty repair "pursuant to Winnebago and Ford's warranties"), and, on at least one occasion, conflates the two entirely. See id. ¶ 26 (alleging that each of the attempted warranty repairs was "done in accordance with Winnebago and Ford's warranty").

Federico's treatment of the Winnebago Warranty and the Ford Warranty is particularly problematic because it elides the significant differences between the two warranties. Even Federico acknowledged in his December 11, 2009 More Definite Statement of Count II that the Winnebago Warranty "excludes chassis, drivetrain and related components, wheels, and tires." Federico's More Definite St. ¶ 25. Moreover, the Winnebago Warranty states in no uncertain terms that it does not cover "[a]ny other part or component covered by a written warranty issued by its manufacturer." Winnebago Warranty at 1. This provision in the Winnebago Warranty suggests that the Winnebago and Ford Warranties do not cover *any* of the same components. See Ford Warranty at 9 (promising that Ford will repair all malfunctions that are "due to a manufacturing defect in factory-supplied materials or factory workmanship"). Yet nowhere in the Complaint does Federico attempt to describe which of the RV's component failures are covered by the Ford Warranty and which are covered by the Winnebago Warranty. Thus, the Complaint's lack of specificity again deprives Winnebago of the opportunity to "reasonably respond" to Federico's allegations. See Bowers, 1996 WL 169415, at *1. Given that Federico has had three opportunities to state a claim for breach of express warranty against Winnebago – and the Court warned Federico in the last Order that he would not be given another chance - the Court dismisses Count I of the Complaint with prejudice.

### 2. Breach of Implied Warranty Claim Against Freedomroads

Count II of Federico's Complaint alleges that Freedomroads breached the implied warranty of merchantability with respect to the RV. Federico acknowledges that the purchase order for the RV disclaimed all warranties, express or implied, but contends that the disclaimers were unconscionable. As pleaded, Federico's allegations of the disclaimers' unconscionability are far from compelling. Nevertheless, the Court concludes that under Illinois statutory law, Federico must be afforded an opportunity to present evidence as to the provisions' alleged unconscionability.

The MMWA "authorizes a consumer to sue for breach of a state law implied warranty." Semetikol v. Monaco Coach Corp., 582 F. Supp. 2d 1009, 1026 (N.D. Ill. 2008); see also 15 U.S.C. § 2301(7) (defining an implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product"). Illinois statutory law provides that "[u]nless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILL. COMP. STAT. 5/2-314(1). However, an implied warranty of merchantability can be disclaimed so long as the disclaimer mentions "merchantability" and is "conspicuous." 810 ILL. COMP. STAT. 5/2-316(2). "Whether a disclaimer is conspicuous is a question of law for the court." Hamilton v. O'Connor Chevrolet, Inc., 399 F. Supp. 2d. 860, 867 (N.D. Ill. 1999). In Hamilton, the court found that a disclaimer was conspicuous where it stated in bold as follows: "there are no implied warranties of merchantability, or fitness for a particular purpose, or any other warranties, express or implied by the Seller." Id. The court explained that "[t]he bold-faced writing is not hidden or obscured; in fact, it is free-standing and set forth in its own paragraph out from the remainder of the text." Id.

In the present case, there is little doubt that the purchase order's warranty disclaimers are conspicuous. The purchase order for the RV states three separate times – twice in bold caps and once in underlined caps - that Freedomroads disclaims all warranties, including any implied warranty of merchantability. Even Federico seems to acknowledge the conspicuousness of the disclaimers. See Federico Resp. at 8 (noting that one of the disclaimers is "in all capitals, underlined and just above the buyer's signature line").

Federico claims, though, that the disclaimer is unconscionable and that under 810 ILL. COMP. STAT. 5/2-302(2) he is entitled to present evidence as to the provision's commercial setting, purpose and effect. Section 2-302(2) states in its entirety as follows:

> When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

At least two courts have held that section 2-302(2) can apply to a disclaimer provision, even if a court finds that disclaimer to be conspicuous. See Semetikol, 582 F. Supp. 2d at 1030; see also FMC Fin. Corp. v. Murphree, 632 F.2d 413, 420 (5th Cir. 1980) (holding under Illinois law that a warranty disclaimer may be unconscionable even though it is conspicuous because "section 2-302 expressly applies to 'any clause of the contract,' and section 2-316 does not expressly state that all disclaimers meeting its requirements are immune from section 2-302").

In Semetikol, plaintiffs purchased a motorhome that allegedly had numerous defects. 582 F. Supp. 2d at 1013-14. Plaintiff subsequently sued the motorhome dealer and the manufacturers of the motorhome under the MMWA. Id. at 1014. Among other claims, plaintiffs brought a breach of implied warranty claim against the dealer. Id. at 1026. The dealer then sought to dismiss the claim based on the disclaimers contained in the motorhome's buyers order. Id. at 1029. The court found the disclaimers conspicuous, but held that plaintiffs still had a right to

present evidence regarding the disclaimers' unconscionability under section 2-302(2). Id. at 1029-30. The court noted that although "the question of the unconscionability of a clause is for the court to decide," generally "a full hearing on the issue is required." Id. at 1030 (quotations omitted). Therefore, the court concluded that "in light of section 5/2-302 of the Illinois UCC, it is clear that plaintiffs' claim of unconscionability must survive [the dealer's] motion to dismiss in order to allow the court to receive evidence on the issue of unconscionability." Id.

The Semetikol court's interpretation of section 2-302(2) is reasonable because, as the Illinois Supreme Court has explained, "the issue of unconscionability should be examined with reference to *all of the circumstances* surrounding the transaction." Kinkel v. Cingular Wireless LLC, 857 N.E.2d 250, 265 (Ill. 2006) (emphasis added). Thus, under Illinois law, a court's examination of a disclaimer's alleged unconscionability should not be limited solely to an analysis of the provision's conspicuousness. See Frank's Maint. & Eng'g, Co. v. C.A. Roberts Co., 408 N.E.2d 403, 410 (Ill. App. Ct. 1980) (stating that "both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability"); see also FMC, 632 F.2d at 420 ("[T]hough the disclaimer may be conspicuous so that the buyer is aware of it, unconscionability may still exist if the disclaimer is oppressive."). Rather, a court should take into account, "all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." Frank's Maint., 408 N.E.2d at 410.

Following the logic of Semetikol, the Court finds that Federico must be allowed to present evidence regarding the commercial setting of the purchase order's disclaimers. The Court notes that Federico's Complaint does more than simply allege that the purchase order's

disclaimers were inconspicuous. The Complaint also alleges that prior to the signing of the purchase order Freedomroads repeatedly contradicted the purchase order's disclaimers by representing to Federico that a factory-trained team of mechanics would repair any RV defect that occurred within a twelve-month period or Freedomroads would refund Federico's purchase money. Compl. ¶ 63-4, 67. As a result, the Court's finding that the purchase order's disclaimers were conspicuous does not resolve all questions concerning the disclaimers' unconscionability. See Frank's Maint., 408 N.E.2d at 410; see also FMC, 632 F.2d at 420. Accordingly, under section 2-302(2), Freedomroads and Winnebago's motion to dismiss must be denied with respect to Count II of Federico's Complaint. See Semetikol, 582 F. Supp. 2d at 1030.

### 3. Federico's ICFA Claims

Freedomroads and Winnebago next argue that Federico's Count III ICFA claims against Freedomroads and Winnebago should be dismissed for failure to plead fraud with particularity. The Court acknowledges that Federico's ICFA claims are not artfully pleaded, but finds that Federico has alleged just enough to survive a motion to dismiss with respect to his "knowing concealment" claim.

In order to state a claim under the ICFA, "a plaintiff must allege that (1) a defendant engaged in a deceptive act or practice (2) with the intent that the plaintiff rely on the deception (3) in the course of trade or commerce, and (4) the deception was the proximate cause of the claimant's alleged injury." Neff v. Capital Acquisitions & Mgmt. Co., 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002) (citing Connick v. Suzuki Motor Co., 675 N.E.2d 584, 593 (Ill. 1997)); see also Costa v. Mauro Chevrolet, Inc., 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005) ("A complaint alleging a violation of the Illinois Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b).").

Importantly, Illinois courts have held that "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." Pappas v. Pella Corp., 844 N.E.2d 995, 998 (Ill. App. Ct. 2006). "Concealment is actionable where it is employed as a device to mislead." IWOI, LLC v. Monaco Coach Corp., 581 F.Supp.2d 994, 1002 (N.D. Ill. 2008). In IWOI, plaintiff alleged that an RV dealer and an RV manufacturer violated the ICFA by knowingly selling plaintiff an RV that contained material manufacturing defects and concealing those defects from plaintiff. Id. at 1002-3. The IWOI court held that plaintiff's claim met the requirements of Rule 9(b), even though its allegations were "somewhat unclear with respect to 'who knew what when.'" Id. at 1004. The court explained that plaintiff's allegations were sufficient because they "identif[ied] at least some facts indicating, or from which one could infer, specific acts that [the manufacturer] or [dealer] undertook, or information that was concealed, with the intent to mislead [p]laintiff." Id.

Here, Count III of the Complaint alleges that Freedomroads and Winnebago committed five separate violations of the ICFA. Although at least one of these claims is meritless,[4] Federico's allegation that Freedomroads and Winnebago knowingly concealed the RV's material defects from Federico does state a claim under the ICFA. Similar to the IWOI plaintiff, Federico alleges that Freedomroads and Winnebago knew that the RV was in disrepair as a result of a defective engine, flywheel and axles, but deliberately concealed those defects from him in order to induce his purchase of the vehicle. As in IWOI, Federico's allegations are somewhat unclear as to "who knew what when." However, Federico does allege that the RV "arrived at Freedomroads' facility in a severely defective condition," Compl. ¶ 13, and that he experienced

---

[4] For example, Federico alleges that "Freedom roads [sic] made false promises that Freedomroads would repair the RV within a twelve month period, and if the repairs are not satisfactory or unsuccessful, it would refund the purchase price." Compl. ¶ 79. However, Illinois law is clear that a plaintiff cannot state a valid ICFA claim simply by alleging "that a defendant promised something and then failed to do it." Avery v. State Farm Mut. Ins. Co., 835 N.E.2d 801, 844 (Ill. 2005) (quoting Zankle v. Queen Anne Landscaping, 724 N.E.2d 988, 993 (Ill. App. Ct. 2000)); see also IWOI, 581 F. Supp. 2d at 1003.

problems with the RV almost immediately after his purchase. Id. ¶ 17. The close temporal proximity between Federico's purchase of the RV and the onset of the RV's performance problems suggests that Freedomroads and Winnebago may have been aware of the problems at the time of sale. And, according to Federico, Freedomroads and Winnebago never apprised him of these defects. Thus, the Complaint provides at least some factual detail indicating that Freedomroads and Winnebago intentionally concealed material information from Federico concerning the RV in order to induce his purchase of the vehicle. Therefore, the Court denies the motion to dismiss with respect to Count III. See Perona v. Volkswagen of Am., Inc., 684 N.E.2d 859, 864-67 (Ill. App. Ct. 1997) (holding that plaintiffs stated a ICFA claim against a car manufacturer where they alleged that the manufacturer's cars had an unintended acceleration problem and that the manufacturer knowingly concealed the problem from plaintiffs); see also IWOI, 581 F.Supp.2d at 1004 (holding that "manufacturers can be liable under the [ICFA] when they knowingly place a materially defective product into the stream of commerce whether or not they are in privity of contract with or communicate directly to the end consumer").

### 4. Breach of Contract Claim Against Freedomroads

Count IV of Federico's Complaint alleges that he and Freedomroads entered into a contract on September 21, 2008 when Freedomroads' general manager Patrick Carr signed a statement agreeing to refund the cost of the RV if the "shimmy" problem was not fixed. According to Federico, Freedomroads' refusal to refund Federico's purchase money constitutes a breach of this contract. Freedomroads, in turn, claims that the parties did not form a contract because there was no consideration.

To state a claim for breach of contract under Illinois law, a plaintiff must plead: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the

problems with the RV almost immediately after his purchase. Id. ¶ 17. The close temporal proximity between Federico's purchase of the RV and the onset of the RV's performance problems suggests that Freedomroads and Winnebago may have been aware of the problems at the time of sale. And, according to Federico, Freedomroads and Winnebago never apprised him of these defects. Thus, the Complaint provides at least some factual detail indicating that Freedomroads and Winnebago intentionally concealed material information from Federico concerning the RV in order to induce his purchase of the vehicle. Therefore, the Court denies the motion to dismiss with respect to Count III. See Perona v. Volkswagen of Am., Inc., 684 N.E.2d 859, 864-67 (Ill. App. Ct. 1997) (holding that plaintiffs stated a ICFA claim against a car manufacturer where they alleged that the manufacturer's cars had an unintended acceleration problem and that the manufacturer knowingly concealed the problem from plaintiffs); see also IWOI, 581 F.Supp.2d at 1004 (holding that "manufacturers can be liable under the [ICFA] when they knowingly place a materially defective product into the stream of commerce whether or not they are in privity of contract with or communicate directly to the end consumer").

### 4. Breach of Contract Claim Against Freedomroads

Count IV of Federico's Complaint alleges that he and Freedomroads entered into a contract on September 21, 2008 when Freedomroads' general manager Patrick Carr signed a statement agreeing to refund the cost of the RV if the "shimmy" problem was not fixed. According to Federico, Freedomroads' refusal to refund Federico's purchase money constitutes a breach of this contract. Freedomroads, in turn, claims that the parties did not form a contract because there was no consideration.

To state a claim for breach of contract under Illinois law, a plaintiff must plead: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the

contract by the defendant; and (4) resultant injury to the plaintiff." Gallagher Corp. v. Russ, 721 N.E.2d 605, 611 (Ill. App. Ct. 1999). In order to form a valid and enforceable contract, "there must be an offer, a strictly conforming acceptance, and consideration." Hedlund & Hanley, LLC v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 876 N.E.2d 1, 6 (Ill. App. Ct. 2007). Consideration means "a bargained-for exchange of promises or performances" and "may consist of a promise, an act, or a forbearance." Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc., 810 N.E.2d 658, 669 (Ill. App. Ct. 2004); see also F.H. Prince & Co. v. Tower Fin. Corp., 656 N.E.2d 142, 147 (Ill. App. Ct. 1995) ("[I]t has been held that the compromise of a disputed claim will serve as consideration as will a promise to forego legal action."); De Fontaine v. Passalino, 584 N.E.2d 933, 939 (Ill. App. Ct. 1991) ("Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.").

Federico alleges that the consideration for the September 21, 2008 agreement was his delay in revoking his acceptance of the RV, which he exchanged for Carr's promise to refund Federico's purchase money if the repairs of the RV failed. Compl. ¶¶ 87-88. Freedomroads asserts, though, that Federico did not possess the right to revoke his acceptance of the RV because the purchase order disclaimed all warranties express or implied. In support of this argument, Freedomroads directs the Court's attention to Larry J. Soldinger Assocs., Ltd v. Aston Martin Lagonda of N. Am., Inc., where the court dismissed plaintiff's revocation of acceptance claim because the defendant auto dealer validly disclaimed all warranties with respect to the car at issue. No. 97 C 7792, 1998 WL 151817, at *5. But see Blankenship v. Northtown Ford, Inc., 420 N.E.2d 167, 170 (Ill. App. Ct. 1981) (holding that "revocation of acceptance is appropriate even if [a] dealer has properly disclaimed all implied warranties" where "the evidence

unequivocally demonstrate[s] that the substantially defective nature of the vehicle clearly impaired its value to the plaintiffs"). Citing Soldinger, Freedomroads claims that Federico's forbearance of his revocation of conditional acceptance did not constitute consideration because he did not forego a valid legal claim and therefore suffered no detriment.

Freedomroads fails to acknowledge, however, that "[t]he compromise of a disputed claim will provide consideration for [an] agreement, even if the claim is shown to be invalid, as long as it is asserted in good faith." F.H. Prince, 656 N.E.2d at 148. In F.H. Prince, for example, defendant argued that plaintiff's agreement to forego a claim against defendant's subsidiary was not sufficient consideration to form a valid contract because the claim was uncollectible as a result of the subsidiary's insolvency. Id. The court rejected that argument noting that neither plaintiff nor defendant had knowledge of the insolvency. Id. at 149. Absent that knowledge, the court found that plaintiff's "good faith" compromise of its claim served as consideration, even though the claim was in fact uncollectible. Id.

Construing the Complaint in the light most favorable to Federico, Federico appears to have had a good faith belief that he could revoke his acceptance of the RV at the time the parties signed the statement. That belief is reflected in Federico's attorney's subsequent correspondence with Freedomroads, see October 9, 2008 Letter to Freedomroads ("Please let this letter serve as Mr. Federico's revocation of acceptance of the above-referenced motor home."), and his allegations that the purchase order's disclaimers are unconscionable and therefore do not preclude him from revoking his acceptance of the RV. Compl. ¶¶ 62-67; see also Blankenship, 420 N.E.2d at 170 (holding that in certain instances a consumer can revoke his acceptance of a vehicle even when the dealer properly disclaimed all warranties). Thus, under F.H. Prince, Federico's good faith forbearance of his right of revocation could still function as consideration

for the formation of a contract despite the significant questions that remain regarding the existence of that right. As a result, the Court denies Freedomroads' motion to dismiss with respect to Count IV.

### III. CONCLUSION

For the foregoing reasons, Freedomroads and Winnebago's motion to dismiss is granted in part and denied in part. Count I of Federico's Complaint is dismissed with prejudice. The motion is denied with respect to Counts II-IV.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: November 10, 2010